**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

USDC- GREENBELT
'26 AUG 26 AM8:32

GEORGE DODSON,

Plaintiff,

v.

CARLOS BIVENS, and
AUGUSTIN KUBRI,

Defendants.

Civil Action No. 1:24-cv-2328-LKG

Dated: August 24, 2026

**MEMORANDUM OPINION**

Defendants Carlos Bivens and Augustin Kubri have filed a motion to dismiss or, in the Alternative, for Summary Judgment in response to the above-entitled civil rights complaint filed by *pro se*, Plaintiff George Dodson. ECF No. 19. Dodson, who at all times relevant to this case was incarcerated in the Maryland Division of Correction, opposes the motion and moves for appointment of counsel. ECF Nos. 24, 25.[1] No hearing is necessary. *See* D. Md. Local R. 105.6 (2025). For the reasons that follow Defendants' motion, construed as a motion for summary judgment, will be **GRANTED,** and Dodson's motion to appoint counsel will be **DENIED**.

## I. FACTUAL BACKGROUND

On June 21, 2024, at 6:00 p.m., when he was incarcerated at Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland, Dodson had just finished working sanitation detail on a housing unit. ECF No. 5 at 4. He stated that he was about to take a shower when he saw two inmates, Brian Wilson and Bryant Kareem, quickly approaching the tier. *Id.* Dodson noticed that both men were "clutching something in their waistband," which signaled to him that danger was coming his way. *Id.* Although Dodson attempted to escape from the tier, he had no success in fleeing or trying to get help. *Id.* Instead, he was "forced to try fighting them off while

[1] Dodson also filed a motion for extension of time (ECF No. 26), but it is unclear why the motion was filed given he had already filed his response in opposition. Accordingly, that motion will be denied as moot.

being repeatedly stabbed in [his] upper and lower back." *Id.* Dodson states he was also stabbed multiple times in his head. *Id.*

According to Dodson, the officers stationed in the "bubble" watched while he was being attacked and "after a delayed response," Officer Kubri came onto the tier and sprayed mace. ECF No. 5 at 5. In Dodson's view, had the officers in the bubble closed the tier door or responded more quickly, he would not have suffered a life-threatening assault. *Id.* Dodson explains that Warden Bivens is named as a Defendant because he believes that if the officers who were present had the proper training, this incident could have been prevented. *Id.* Dodson adds that, "Warden Bivens is in charge of the prison and officers so due to the attack on my life he should be held accountable for failing to protect me." *Id.*

Dodson's injuries required a trip to an outside hospital for sutures to close the multiple wounds to his upper and lower back. ECF No. 5 at 5. He also claims the stab wounds to his head cause him to suffer random headaches. *Id.* As relief, he asks to be awarded $250,000 and to be transferred to another prison.[2] *Id.*

In the Officer's Use of Force Incident Reports submitted by defendants, the officers involved in the incident are listed as K. Owusu-Edusei, A. Kubri, E. Sumvi, B. Lopez, S. Akuma, and S. Adeniyan. ECF No. 19-4 at 15. In his report, Kubri stated that he was assigned to 3 A-tier when he observed inmates Bryant and Wilson leave A-tier and walk over to the entrance of D-tier in Housing Unit 3. *Id.* at 19. This occurred while Kubri was letting returning inmates back onto the tier. *Id.* He stated that he tried to stop Bryant and Wilson but they "would not comply" with his order and "then proceeded to get into an altercation" with Dodson at the entrance of D-tier. *Id.* Kubri claims he gave multiple orders to the inmates to "stop fighting," but they did not comply; he then "administered OC spray from [his] MK9 fogger." *Id.* At that time, the assault stopped. Officer Owusu-Edusei, who was the officer in charge, responded to the area and placed Dodson in handcuffs; Bryant was handcuffed by Officer Sumvi, and Wilson was handcuffed by Officer Lopez. *Id.* When the area where the assault occurred was searched, Officer Owusu-Edusei found one homemade weapon consisting of a six-inches long and 2 inches wide piece of metal sharpened at one end and wrapped in cloth at the other end. *Id.* at 17.

---

[2] Dodson was transferred to Maryland Correctional Institution Hagerstown on January 17, 2025, and was transferred from there to Jessup Correctional Institution on October 2, 2025. ECF No. 19-3 at 2. And so, his request for a transfer is moot.

The incident was investigated by the Intelligence & Investigative Division ("IID") of the Department of Public Safety and Correctional Services ("DPSCS"). ECF No. 19-4 at 2-9 (report without exhibits). Detective Sergeant R. Fagan investigated, and as part of his investigation, he interviewed Dodson after he had returned from the hospital. *Id.* at 8. Dodson told Fagan that both assailants had weapons and that he did not know either of the inmates but had seen them before. *Id.* He related that Bryant and Wilson had been sent by the gang "Murder, Inc.," because Dodson had testified against someone years ago. *Id.* Dodson also told Fagan that "he had been telling staff that he was not safe, but he continued to be assigned to General Population." *Id.* In an interview on November 1, 2024, Dodson told Fagan he wanted to pursue criminal charges against Bryant and Wilson. *Id.* at 9.

The assault on Dodson was captured on the tier surveillance camera stationed at the opposite end of the tier. ECF No. 19-4 at 8. The video shows two inmates entering the door on the tier; Dodson briefly attempts to dodge them to no avail; a fight ensues where it appears Bryant and Wilson are stabbing Dodson; and one of the assailants abandoned the assault and exited the tier. ECF No. 19-6 (DVD filed separately). It is difficult to tell when the OC spray was deployed except for the observable effects it had on those who were present and that the affray immediately ended. *Id.* The entire incident, from the time Bryant and Wilson entered the tier to the time when the assault was clearly over, lasted approximately one minute according to the timer displayed on the video. *Id.* It appears that an officer arrived on scene in approximately 9 to 15 seconds after the assault on Dodson began. *Id.*

Defendants state that Dodson had not listed Bryant or Wilson as enemies prior to June 21, 2024. ECF No. 19-7 at 2, ¶ 4.

## II. LEGAL STANDARD

In reviewing the amended complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Świerkiewicz v. Sorema N.A.*,

534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

While self-represented pleadings are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for

summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

"[S]ummary judgment should only be granted 'after adequate time for discovery,'" *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[W]hen a party lacks material facts necessary to combat a summary judgment motion, [he] may file an 'affidavit or declaration that, for specified reasons, [the party] cannot present facts essential to justify its opposition,' " referred to as a Rule 56(d) motion. *Id.* (quoting Fed. R. Civ. P. 56(d)).

Rule 56(d) motions "must be granted 'where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Id.* at 483–84 (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)). "[S]uch motions are 'broadly favored and should be liberally granted.'" *Id.* at 484 (quoting *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (en banc)). "This is especially true in the context of pro se litigation," *Jenkins v. Woodard*, 109 F.4th 242, 251 (4th Cir. 2024) (citing *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021)), particularly "when a case involves complex factual questions about intent and motive" and "the relevant facts are exclusively in the control of the opposing party." *Harrods Ltd.*, 302 F.3d at 247 (citations omitted).

"The threshold showing to support a Rule 56(d) motion is low. For example, when a nonmovant bears no fault for its 'little or no opportunity to conduct discovery, and when fact-intensive issues, such as intent, are involved,' a formal Rule 56(d) affidavit is not mandatory." *Escobar-Salmeron v. Moyer, et al.*, 150 F.4th 360, 369 (4th Cir. 2025), (quoting *Harrods Ltd.*, 302 F.3d at 244). The nonmovant need only "adequately inform[] the district court that the motion is pre-mature and that more discovery is necessary." *Id.*

## III. ANALYSIS

### A. Immunity Defenses

Defendants assert that to the extent that Dodson raises any claims against them in their official capacity, the claims are barred by the Eleventh Amendment and must be dismissed. ECF

No. 19-1 at 8. Defendants admit Dodson does not specify whether he is suing them in their official or personal capacities or both, but apparently wish to ensure that any possibility of an official capacity claim surviving this stage of litigation is quashed. This Court does not, however, construe Dodson's amended complaint as raising any official capacity claims against the Defendants named. Had he done so, Defendants would be correct in their assertion that the claims would be barred by the Eleventh Amendment.

Defendants also raise a statutory immunity defense "for all tort claims." ECF No. 19-1 at 12-13. Defendants assert that if Dodson's § 1983 complaint could be construed as "making a claim related to tort liability," they are statutorily immune from such claims pursuant to Md. Code Ann., St. Gov't. § 12-105. *Id.* Dodson filed his complaint on forms created by this Court for use in litigating claims filed pursuant to 42 U.S.C. § 1983. Nowhere in his pleadings does he invoke the language of a tort claim. The statutory immunity defense is inapplicable here.

Lastly, Defendants raise a qualified immunity defense, claiming that Dodson has failed to show that defendant's conduct violated the law. ECF No. 19-1 at 13-14. Because the Court finds that the undisputed facts entitle Defendants to summary judgment, the qualified immunity defense need not be reached or addressed.

**B. Failure to Protect**

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id.* "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id.* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128, *see also Ford v. Hooks*, 108 F.4th 224, 231 (4th Cir. 2024) (finding officer who questioned prisoner on housing unit very loudly about who he needed protection from and why he wanted protective custody may have knowingly exacerbated the danger making response unreasonable).

Actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844. Where prison officials conclude that they did not have enough information to carry out an

appropriate investigation of a prisoner-plaintiff's claim that his life was endangered they had not "*consciously disregarded*" the risks he described. *Ford v. Hooks*, 108 F.4th 224, 231 (4th Cir. 2024) (noting plaintiff had not provided names of prisoners who represented a threat and prison officials did not recognize their responses were inappropriate) (emphasis in original). "In failure to protect cases, prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Raynor*, 817 F.3d at 128 (internal quotation marks omitted) (quoting *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)); *Thompson v. Virginia*, 878 F.3d 89, 108 (4th Cir. 2017) ("[P]rison officials are not liable if taking action would endanger their own lives or if the harm occurred despite their reasonable efforts to prevent it."). Failure to take (any/reasonable) action in an ongoing assault, however, can amount to deliberate indifference. *See Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (holding correctional officers were deliberately indifferent to prisoner's substantial risk of serious harm where correctional officers failed to take reasonable action after prisoner repeatedly informed them that he feared for his safety before he was beaten); *Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) (finding no deliberate indifference where unarmed prison officials did not intervene in an armed attack immediately but called for backup).

Assuming Dodson told someone at RCI that there was a risk of harm to his safety due to his cooperation or testimony in a case several years before this incident occurred, his inability to name a specific risk is fatal to his claim. RCI officials had no way of knowing whether Dodson was more at risk of harm than any other inmate within the general population. A statement of generalized fear that retribution might be taken against him is not enough to place Defendants on notice that Dodson required additional precautions such as protective custody. His assertion in his opposition response that all housing unit tiers are supposed to remain locked at all times disregards the need to open the doors to allow mass movement for the return of inmates assigned to the tier following a meal or recreation.

Dodson's Rule 56(d) request for discovery is inadequate to delay the decision to grant summary judgment in favor of Defendants. Dodson's request is formulaic and is submitted on a form that has no specific bearing on the facts of this case. He does not explain what documents or facts he does not have access to that would assist in opposing Defendants' motion; rather, he simply states that he needs access to more documents. For these reasons, summary judgment will be granted in favor of Defendants.

## IV. CONCLUSION

By separate Order which follows, Defendants' motion, construed as one seeking summary judgment, shall be **GRANTED**. Dodson's motion to appoint counsel shall be **DENIED,** and his motion for extension of time shall be **DENIED** as moot.

August 24, 2026
Date

LYDIA KAY GRIGGSBY
United States District Judge